IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                                          )
                                                )  Chapter 11
MCQUILLEN PLACE COMPANY, LLC,                   )
                                                )  Bankruptcy No. 19-00507M
            Debtor.                             )

## MEMORANDUM AND ORDER

The Motion to Convert came on for telephonic hearings on November 14,

and 21, 2019.  Days before the first hearing, Debtor filed a Motion to Dismiss the

Chapter 11 case.  Don Molstad appeared for the Debtor, McQuillen Place

Company, LLC ("Debtor").  Charles Thomsen appeared as principal of the Debtor.

Larry Eide appeared for Creditor, First Security and Trust Company ("First

Security).  Joseph Schmall appeared for interested party, CRBT and Trust

Company ("CRBT").  Brandon Gray appeared for the Iowa Economic

Development Authority ("IEDA").  Ashley Zubal appeared for the United States

Trustee ("US Trustee").  First Security originally filed the Motion to Dismiss or

Convert and now requests the Court to convert the case from Chapter 11 to

Chapter 7.  The IEDA and CRBT join First Security in asking the Court to Convert

the case to Chapter 7.  The US Trustee takes no stance as to the Motion to Dismiss

or the Motion to Convert.  Monica Clark appeared for interested party, the City of

Charles City, and also takes no stance on the motions.  This is a core proceeding

under 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

First Security, Iowa Economic Development Authority, and CRBT argue there is continuing loss and diminution to the estate and an absence of a reasonable likelihood of rehabilitation under 11 U.S.C. § 1112(b)(1). They also argue other equitable considerations warrant conversion including an unreasonable delay prejudicial to creditors under 11 U.S.C. § 1112(b)(3). They believe dismissing the case would be detrimental to all parties involved. Debtor urges the Court to dismiss the case to allow for a foreclosure sale. The US Trustee and City of Charles City are neutral parties and do not have a preference as to conversion versus dismissal. After carefully considering this case, the Court concludes it should be converted from Chapter 11 to Chapter 7.

## BACKGROUND AND FINDINGS OF FACT

Debtor, McQuillen Place Company, LLC, filed a Chapter 11 petition on April 25, 2019. The Debtor's primary asset is real property in Floyd County, Iowa, locally known as 123 N. Main Street, Charles City, Floyd County, Iowa. The property is known as McQuillen Place Condominiums, or Condominium Unit A and Condominium Unit B of McQuillen Place Condominiums ("Property"). Charles Thomsen, Debtor's principal, states the property is intended to be for commercial and residential use. The owners of McQuillen Place Company, LLC are Mr. Thomsen (60%) and James Gray (40%).

2

When discussions on the project started in 2013-2014, Thomsen sought a loan from First Security; however, the bank declined due to his inexperience with the type of project. He then sought other financing through other lenders throughout the United States and chose CRBT. CRBT learned that First Security had an interest in the project succeeding, for various reasons including it being beneficial for their city. CRBT asked First Security if it would participate in the loan. First Security agreed to participate, and CRBT was the "lead bank"— meaning it was the actual mortgage holder. CRBT made the loan, reported the mortgage and made all the advances on the loan.

First Security eventually grew concerned with the progress of the construction and sought more control. CRBT agreed to assign the loan to First Security. In July 2018, after First Security took over the loan, it held a mediation with Debtor. They reached an agreement on a new payment plan for the first mortgage.

First Security is now the holder of a claim against Debtor which is secured by a Construction Mortgage and a Promissory Note dated December 31, 2014. First Security filed a proof of claim in this bankruptcy case for $4,030,746.28. The promissory note is delinquent and accrues interest at 11.75 % per annum. The Promissory Note and Mortgage had been filed at the Office of the Recorder in Floyd County, Iowa, on January 5, 2015.

3

In 2014, a groundbreaking was held for the building, but construction did not start until 2015.  Construction eventually came to a halt in July 2017 with the project at 90 percent completion.  First Security has noted many construction delays before the stoppage.  It will take around 90 more days to finish the project.

Before bankruptcy, the mortgage payments fell behind, and First Security filed a mortgage foreclosure action filed in the Iowa District Court for Floyd County in March 2018. (Case No. EQCV031170).   Several other parties were joined as defendants to the mortgage foreclosure largely based on guarantees under the Note.  In the mortgage foreclosure action, Debtor has filed numerous counterclaims.  Many of these claims are against First Security and CRBT.  The property has not been touched since the April 2019 bankruptcy filing.  First Security has notified Debtor of the structural damage to the property and its continued deterioration.

On its Schedules, Debtor listed the Property as has a value of $500,000, and the secured debt owed to primary creditor, First Security & Trust Company in excess of $6.8 million.  First Security and the US Trustee assert Debtor has no equity in the property.  The Property is listed as a duplex housing 33 units; however, the Property remains under construction and remains unfinished and unoccupied.  The intent is to have the second and third floors of the property house apartments with commercial real estate on the first floor.

4

Debtor now argues the project was not completed for several different reasons. Debtor blames IEDA's refusal to provide tax credits it promised under the Enterprise Zone Program. The tax credits had a gross value around $700,000. Debtor had planned to sell the tax credits and believed they will yield net funds of $560,000. Debtor also blames First Security for this loss. Meanwhile, First Security argues Debtor did not correctly sign its contract with the IEDA and did not finish the project in the required two-year time frame. Debtor's administrative appeal to the IEDA was unsuccessful. Debtor eventually sued the IEDA in Floyd County, Iowa.

According to the US Trustee and First Security, during the meeting of the creditors in this case, Thomsen acknowledged the only way to have a successful plan of reorganization would be to find a party to secure financing to complete construction. Thomsen insisted a third-party financer was interested, and the money would be secured in a two-week time frame. Months passed and Debtor sought multiple extensions of the exclusivity period. However, the financing was never secured.

First Security points out that in June 2018, it had to advance payment of the real estate taxes that had accrued a penalty of $236,446 in order to prevent a tax sale. First Security claims the real estate taxes against the Property became delinquent and were not paid prior to October 1, 2018. First Security remains

unpaid with penalties reaching over $300,000 accruing at the rate of 1.5% per month.

Debtor disagrees with First Security's assertions about the tax bills. Debtor claims they were never intended to be paid in full. Debtor notes it intended to be a part of a tax increment financing transaction in which Debtor would pay a smaller tax payment and then would be paid most of the funds back as a rebate. According to Debtor, the rebate was intended to be used for financing the indebtedness from the construction. Debtor claims it was prevented from completing the building before the tax bills became due resulting in the Debtor being unable to use projected rent income to satisfy the tax obligations. Debtor also blames First Security's refusal to accept a $900,000 offer from a guarantor of the building's debt as a reason the construction was unfinished and resulted in the delinquent tax obligations. First Security denies any fault.

Debtor also failed to fix the sidewalks in front of the property. The City of Charles City had to replace the sidewalks and assess the cost against the real estate of $48,475. Overall, Debtor has not paid any real estate taxes nor assessments since March 2017. Debtor also has a negative history of insurance payments on the project. First Security has had to advance installments on the insurance.

Debtor currently has little or no capital to put into the project. According to the First Security and the US Trustee, Debtor generates very little income through

a dry-cleaning business it intended to serve as an amenity for residents of the Property. The income is a mere $4,000 a month or less. The affiliated business is owned by Thomsen. First Security asserts Debtor has no equity in the Property and Debtor has not offered it any adequate protection. It has also been pointed out that payments on taxes and insurance are not being accurately reflected on the MORs. Thomsen is apparently paying some of the costs in a personal capacity. Based on the monthly operating reports, Debtor has no capital to pay taxes, insurance, or attorney's fees.

On July 2, 2019, First Security filed a Motion for Relief from Stay, and on July 9, 2019, Debtor filed an objection. The parties negotiated about a possible plan filing and the Court deferred ruling on lifting the stay. On October 4, 2019, Debtor filed a Chapter 11 plan and disclosure statement. First Security and the US Trustee filed objections to the plan and disclosure statement. CRBT filed an objection to the disclosure statement.

On October 17, 2019, First Security filed a Motion to Dismiss or Convert to Chapter 7. The US Trustee also filed a Motion to Convert Case to Chapter 7 on October 25, 2019.

First Security also now points out that Debtor listed a buyer in its disclosure statement that does not exist. First Security has located a company with a similar name, MPC2 Development, LLC. It turns out it was created in April 2019 by

7

Thomsen.  Both banks and the US Trustee have expressed concerns about the LLC for many reasons—including that it does not have a source of funds or ability to purchase the property.

On November 6, 2019, Debtor filed an adversary case, no. 19-09035 against First Security seeking subordination of its claim or interest.  That same day, Debtor also filed an adversary case no. 19-09036 against First Security Directors: Jon Richard Herbrechts-Meyer, Gene Hall, and Kurt Herbrechts-Meyer for tortious interference with contract and other relief.

The final hearing on the Motion to Convert or Dismiss was scheduled for November 14, 2019 at the Webster County Courthouse in Fort Dodge, Iowa.  On November 12, 2019, Debtor filed a voluntary dismissal of the Chapter 11 bankruptcy.  The parties elected to not have an in-court evidentiary hearing.  A telephonic hearing was held on November 14, 2019, where the parties elected to assert their arguments.  A second telephonic hearing on related matters was held a week later.

## CONCLUSIONS OF LAW AND ANALYSIS

There is no argument that the case should stay in Chapter 11.  All parties either want to convert the case to Chapter 7 or dismiss the case.  First Security, CRBT, and the IEDA argue it is in the best interest of the creditors and all parties to convert to Chapter 7 and dispose of the property by a sale under 11 U.S.C.

§ 363.  Debtor disputes the priority, validity, and extent of the lien of First Security.  Debtor asserts that First Security does not propose any plan that would allow funds for trustee to get the property to a sale in Chapter 7.  Debtor argues only a successful sale would provide such funds.  Debtor also asserts unsecured creditors would be unfairly disadvantaged by a § 363 sale.  Furthermore, if the case is converted, Debtor doubts any of the necessary compromises needed for a successful sale can be reached.

Conversion or dismissal of a Chapter 11 case is governed by 11. U.S.C. § 1112(b)(1).

The Bankruptcy Code provides:

[O]n request of a party in interest, and after notice and a hearing, **the court shall convert a case under this chapter to a case under chapter 7** or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(2) **The court may not convert a case** under this chapter to a case under chapter 7 or dismiss a case under this chapter **if the court finds and specifically identifies unusual circumstances** establishing that converting or dismissing the case is not in the best interests of creditors and the estate, **and** the debtor or any other party in interest establishes that—

(A) **there is a reasonable likelihood that a plan will be confirmed** within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) **the grounds for converting** or dismissing the case **include an act**

9

> **or omission of the debtor** other than under paragraph (4)(A)—
>
> (i) for which there exists a **reasonable justification** for the act or omission; and
>
> (ii) that **will be cured** within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b) (emphasis added). "Thus, if the Court finds 'cause' then the burden shifts to the objecting party to show 'unusual circumstances' such that conversion or dismissal is not in creditors' best interest, along with other facts." In re Keener, Bankr. No. 14-1169, 2017 WL 5054313, at *4 (Bankr. N.D. Iowa Nov. 2, 2017).

Debtor disputes only whether there is cause to convert and argues the beter approach would be for the court to dismiss. If there is "cause" to convert the case, then the Court must convert the case:

> Prior to the 2005 amendments to the Bankruptcy Code, most courts held that a bankruptcy court has broad discretion under § 1112(b) to either dismiss a case or convert it from Chapter 11 to Chapter 7. **Following BAPCPA's 2005 amendments to the Bankruptcy Code, section 1112(b)(1) is no longer permissive, but instead mandates conversion or dismissal if the movant establishes exclusive cause**, and no unusual circumstances establish that conversion or dismissal is not in the best interest of creditors.

Id. at *4 (internal quotation marks omitted) (emphasis added) (quoting In re Miell, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009). "Although conversion is mandatory if courts find 'cause,' courts enjoy wide latitude in determining whether cause

exists in a bankruptcy case." Id. (internal quotation marks omitted) (collecting cases).

## A.  Movant's Burden of Establishing "Cause" for Conversion

"The initial burden lies with the movants to establish a cause for conversion" under § 1112(b)(1).  Miell, 419 B.R. at 366.  The Bankruptcy Code sets out a list of "causes" to convert under § 1112(b)(4).  "Negative cash flow alone can be sufficient cause to dismiss or convert under § 1112(b)." In re Miell, 419 B.R. at 366 (citing Loop Corp. v. United States Trustee, 379 F.3d 511, 515–16 (8th Cir. 2004)).

First Security has argued three grounds for "cause" under § 1112(b)(4) including:

(A)    Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B)    Gross mismanagement of affairs of debtor;

(I)    Failure to timely pay taxes;

11 U.S.C. § 1112(b)(4).

"The statutory list of 'causes' is not exhaustive.  A court may consider other factors and equitable considerations in making the decision on conversion." In re Keener, 2017 WL 5054313, at *4 (internal quotation marks omitted) (quoting In re Keeley & Grabanski Land P'ship, 460 B.R. 520, 536 (Bankr. D.N.D. 2011)).

11

1. **Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation – Section 1112(b)(4)(A)**

Section 1112(b)(4) calls for a "two-fold" inquiry into whether the estate has decreased in its value and if there is a reasonable likelihood of rehabilitation. <u>In re v. Cos</u>., 274 B.R. 721, 725–26 (Bankr. N.D. Ohio 2002). "If the moving parties establish both of those elements, the exceptions to mandatory conversion in § 1112(b)(2) do not apply." <u>In re Keeley & Grabanski Land P'ship</u>, 460 B.R. 520, 539 (Bankr. D.N.D. 2011). One element of the (b)(2) exception is that the cause resulting in mandatory conversion is "other than under paragraph (4)(A)." Thus, if movants can establish cause under § 1112(b)(4)(A), the only way Debtor can avoid conversion is to show unusual circumstances showing the requested conversion is not in the best interest of creditors or the estate. 11 U.S.C. § 1112(b)(1); <u>See</u> <u>In re Keeley & Grabanski Land P'ship</u>, 460 B.R. 520 at 539. After thorough review, the Court concludes movants have established both a substantial and continuing diminution or loss to the estate and the absence of a reasonable likelihood of rehabilitation.

Debtor's monthly operating reports show little to no income. What little income Debtor receives comes from the dry-cleaning business that Debtor's principal owns. The US Trustee and First Security have both noted the income is a mere $4,000 a month or less. Meanwhile, real estate taxes, insurance, attorney's

fees, and bankruptcy fees continue to increase.  Debtor has little to no income, and

liabilities are swiftly increasing.  This demonstrates a "substantial and continuing

loss or diminution of the estate." See In re ARS Analytical, LLC, 433 B.R. 848,

862 (Bankr.D.N.M.2010) (holding continuing loss and diminution shown where

projected future revenue zero and administrative expenses growing).  Therefore,

movants have met their burden on that element.

This Court also finds there is no reasonable likelihood of rehabilitation.

Debtor does not dispute the fact that it is behind on insurance payments and real

estate taxes.  Debtor argues only that those problems can be resolved in state court

proceedings, and after a state court judgment.  Debtor noted its plan to use rent

income from the property to pay for the taxes.  The building, however, is

unfinished, and the taxes are substantially accruing.  Debtor also stated, Charles

City was willing to negotiate to temporarily decrease the payments for the real

estate taxes.  However, no agreement has been made.  First Security has had to

advance several payments for insurance and taxes to prevent further detrimental

consequences.  Charles City put in new sidewalks on the property resulting in

$48,475 being assessed against the property which also has no prospect of being

repaid.

Many of Debtor's arguments rely on favorable outcome of pending litigation

that's expected to last for years.  Debtor is also relying on the income expected

when the project is finished.  The Court views Debtor's arguments based on too

much speculation.  See In re Original IFPC Shareholders, Inc., 317 B.R. 738, 742–

43 (Bankr.N.D.Ill. 2004) (noting in a traditional chapter 11 case whether the debtor

has a "reasonable likelihood of rehabilitation," would not turn on the anticipated

future outcome of a single lawsuit).  The Court, after carefully and thoroughly

reviewing this matter, concludes that movants have established a substantial and

continuing diminution or loss to the estate and the absence of a reasonable

likelihood of rehabilitation of Debtor.  Therefore, the Court concludes movants

have established "cause" under § 1112(b)(4)(A), to convert this case.

**2. Gross Mismanagement of the Affairs of Debtor – Section 1112(b)(4)(B) and Failure to Timely Pay Taxes– Section 1112(b)(4)(I)**

Movants also have alleged "cause" to convert based on gross

mismanagement of the affairs of Debtor.  11 U.S.C. § 1112(b)(4)(B).  To prove

this element, movants need to prove that Debtor engaged in gross mismanagement

of the estate after the case was filed. See In re Keeley & Grabanski Land P'ship,

460 B.R. at 541.

Debtor's inability to pay costs for taxes and insurance, the inability to pay

for attorney's fees and other administrative costs and inability to supply any capital

to the project all prove gross mismanagement of the estate.  Debtor is not only

unable to pay expenses but is also unable to complete the building's construction.

This causes the property to further deteriorate and sustain damage.  There are

14

already missing windows and holes in the plywood causing the inside of the

building to be exposed to the outside elements and animals.  Another winter is

beginning, and Debtor's continued failure to preserve the estate constitutes gross

mismanagement under § 1112(b)(4)(B).

In regards to the specifics of § 1112(b)(4)(I), Debtor currently owes

outstanding property taxes in excess of $300,000.   First Security noted that real

estate taxes continue to accrue at around $18,000 to $20,000 per month.  Debtor

does not dispute that taxes have been unpaid since the commencement of this case.

Debtor has mentioned reasons as to why the taxes have not been paid and blames

fault on First Security.  Debtor, however, still cannot establish any ability to meet

this obligation.  Therefore, Debtor's failure to meet tax obligations further

demonstrates cause for conversion under § 1112(b)(4)(I).

## B. Conversion is in the Best Interest of Creditors and the Estate

All parties agree that cause exists to either convert or dismiss this Chapter 11

case.  This Court has determined there is "cause" to convert or dismiss this case

under 11 U.S.C. § 1112(b)(4).  No creditor has resisted conversion.  In fact, the

creditors taking positions on the issue have all come down very strongly on the

side of conversion.  None of the creditors believe it is in their best interests to

dismiss the case.  Debtor disagrees, arguing unsecured creditors would be harmed

by converting to Chapter 7.

Under the Bankruptcy Code, the only criteria when considering between dismissal or conversion of a chapter 11 case-–upon a finding of cause-–is whether conversion or dismissal in the "best interest of creditors and the estate." In re Sandia Resorts, Inc., 562 B.R. 490, 495 (Bankr. D.N.M. 2016) (citing Lakefront Investors LLC v. Clarkson, 484 B.R. 72, 82 (D. Md. 2012) (noting that "the Bankruptcy Code does not identify factors ... to consider when determining the remedy in the 'best interests of creditors and the estate'). When considering the best interests of the creditors, this Court will consider the practical impact of conversion on all parties.  See In re Sandia Resorts, Inc., 562 B.R. at 495.

"The plain meaning of § 1112(b) allows the bankruptcy court to convert a debtor's voluntary Chapter 11 case when it is in the best interest of creditors and the estate, even if the debtor opposes conversion and favors dismissal." Camden Ordnance Mfg. Co. of Ark., Inc. v. U.S. Trustee (In re Camden Ordnance Mfg. Co. of Ark., Inc.), 245 B.R. 794, 803 (E.D. Pa. 2000). One bankruptcy court noted:

> Once a debtor submits to the jurisdiction of the bankruptcy court and avails itself of bankruptcy protections, the debtor must comply with the Bankruptcy Code. One of those rules is § 1112(b), allowing a bankruptcy court to convert a voluntary Chapter 11 case, even if a debtor wants the case dismissed. [The Debtor] was not compelled to seek protection in bankruptcy and thus, following the statutory framework of the Bankruptcy Code is a fair and necessary requirement for a debtor seeking the benefits of bankruptcy.

16

In re Francis, No. BAP MB 18-012, 2019 WL 1265316, at *6 (citing In re Camden

Ordnance Mfg. Co. of Ark., Inc., 245 B.R. at 805).

While the Bankruptcy Code does not define "best interests" for purposes of

the § 1112(b)(1) inquiry, courts often consider the following factors:

> (1) whether some creditors received preferential payments, and whether
> equality of distribution would be better served by conversion rather
> than dismissal, (2) whether there would be a loss of rights granted in
> the case if it were dismissed rather than converted, (3) whether the
> debtor would simply file a further case upon dismissal, (4) the ability
> of the trustee in a chapter 7 case to reach assets for the benefit of
> creditors, (5) in assessing the interest of the estate, whether conversion
> or dismissal of the estate would maximize the estate's value as an
> economic enterprise, (6) whether any remaining issues would be better
> resolved outside the bankruptcy forum, (7) whether the estate consists
> of a "single asset," (8) whether the debtor had engaged in misconduct
> and whether creditors are in need of a chapter 7 case to protect their
> interests, (9) whether a plan has been confirmed and whether any
> property remains in the estate to be administered, and (10) whether the
> appointment of a trustee is desirable to supervise the estate and address
> possible environment and safety concerns.

In re Francis, No. BAP MB 18-012, 2019 WL 1265316, at *5 (B.A.P. 1st Cir. Mar.

14, 2019) (citing In re Andover Covered Bridge, LLC, 553 B.R. at 178 (quoting In

re Costa Bonita Beach Resort, Inc., 513 B.R. at 200-01).

There are three additional factors to the best interest of creditors analysis

including:

> (11) The prospect of payment of any unpaid secured claims,
> chapter 11 administrative claims, priority claims and nonpriority
> unsecured claims in a converted chapter 7 case or after dismissal; (12)
> Whether conversion to chapter 7 would result in bankruptcy powers and
> procedures being used to benefit secured creditors without providing a

material benefit to other creditors; and (13) Any other prejudice to parties in interest resulting from conversion or dismissal.

In re Sandia Resorts, Inc., 562 B.R. at 496.

The Court will also consider preferences of parties in interest including the US Trustee. Although, the US Trustee took no stance on whether conversion or dismissal is preferred, parties in interest: CRBT and the IEDA expressed a strong preference for conversion.

When considering the best interests of all the parties, this Court concludes converting this Chapter 11 case to Chapter 7 is in the best interest of the estate and its creditors. Several factors listed above point toward conversion including: "whether any remaining issues would be better resolved outside the bankruptcy forum"; "the ability of the trustee in a chapter 7 case to reach assets for the benefits of creditors"; "the prospect of payment of any unpaid secured claims, chapter 11 administrative claims, priority claims and nonpriority unsecured claims in a converted chapter 7 case"; "whether conversion to chapter 7 would result in bankruptcy powers and procedures being used to benefit secured creditors without providing a material benefit to other creditors"; and "any other prejudice to parties in interest resulting from conversion or dismissal."

This Court also believes the analysis from In re Aurora Memory Care, LLC, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018), is particularly well-suited for this case. In that case, many of the factors listed above appear neutral or inapplicable, and

the Court decided to use a general principle test.  Id.  The Court

concluded, "creditors are generally best served by the course of action that results

in the largest number of them being paid the largest amount of money in the

*shortest* amount of time." Id. see also In re Rey, No. 04B22548, 2006 WL

2457435, at *9 (Bankr. N.D. Ill. Aug. 21, 2006).  This consideration strongly

favors conversion.

First Security pointed out that Debtor's claims in state court against First

Security, First Security's officers, and CRBT likely will not be resolved until at

least 2022.  If the sale of the real estate does not occur under Chapter 7,

construction of the property would be delayed until the litigation is complete.  Not

only is this a major delay for all parties, but it is also a detriment to the City of

Charles City.  All parties agree this housing is important and needed by the City.

First Security believes there would be many buyers for the building if the case is

converted to Chapter 7.  A § 363 sale and resuming construction would happen

much quicker than if the case is dismissed.

Converting the case to Chapter 7 would mean the project would likely be

finished 2 years sooner than if the case is dismissed.  If the foreclosure sale

proceeds, all other claims would need to be solved before judgement of the

foreclosure could be granted.  Foreclosure sale would not be complete until after

the 1-year redemption period which would lead to a judgment entered in December

2020, a deed not issued to a buyer until 2021.  Only then could construction

resume and thus the project would not be completed until, at best, June 2022.  If

the case is converted to Chapter 7, a sale under 11 U.S.C. § 363 could happen more

quickly—and potentially have the project completed in 2020.

First Security states it will "carve-out" from its collateral to allow funds for a

sale under 11 U.S.C. § 363.  Debtor disputes the priority, validity, and extent of the

lien of First Security.  Debtor asserts the bank's plan does not provide any actual

funds to the trustee, and only a successful sale would provide such funds.

Furthermore, Debtor argues unsecured creditors would be unfairly disadvantaged

by a § 363 sale.

Conversion will allow the trustee to sell claims in the bankruptcy.  The

Court understands that there are other defendants in the litigation that have asserted

claims against First Security and CRBT; however, the building could still be sold

and completed.  First Security is willing to help find a buyer.  First Security

believes there are 5-10 people that would be interested in buying the property–

making it a prompt sale.

Debtor also has its doubts of a compromise for a successful sale under 11

U.S.C. § 363.  During the hearing, Debtor stated, the bank is being "overly

optimistic" by saying the project could be done in 6 months or less.  Debtor

believes that a sale under 11 U.S.C. § 363 would be a battle, and that it would be

difficult to receive consent from lenders, guarantors, trustee, and mechanic lien holders.  Debtor does not believe they will be able to come to an agreement; therefore, not resolving the timing issue that movants assert.  Debtor believes the sale will take away rights from others especially redemption rights.  Furthermore, Debtor argues converting to Chapter 7 would allow First Security and CRBT to get away with past misconduct.

The Court understands Debtor's concerns and factors them into the analysis. Yet, when weighing all the factors on the best interest of all the parties, this Court finds conversion to Chapter 7 would be in the best interest of all parties.  Creditors likely will be paid money more quickly and there will likely be a decrease in costs and fees likely making the value of the estate greater.  The Court is not allowing the banks to get away with misconduct.  Debtor is still free to pursue its remedies in this forum or in state court.  The Court agrees with First Security's argument that this project needs to be sold as soon as possible and selling it under 11 U.S.C. § 363 is the best option for all parties in this case.  The longer the property sits empty, the more expenses accrue, and the longer the city is without the housing.

Also, it should be noted that none of the secured or unsecured creditors have supported a dismissal instead of conversion, nor has a creditor opposed conversion. Creditors are often best at judging what is in their best interests, and when the

creditors agree, "the court should accommodate to their desire." 7 L. King, *et al.*, eds., *Collier on Bankruptcy* ¶ 1112.04[6] at 1112–57 (15th ed. rev.2006).

Many of Debtor's arguments are based on speculation, and do not explain why conversion would not be in the best interest of the creditors. The Court agrees with First Security that the property is deteriorating and waiting to fix the project until 2022 while expenses accrue would negatively impact the estate. The Court agrees with movants that a sale in bankruptcy under 11 U.S.C. § 363 would be more efficient for all parties. It is also likely the estate and its creditors will benefit from having a Chapter 7 trustee evaluate the claims and sell them based on the best interest of the estate and creditors. The Court agrees the property should be sold under Chapter 7. Therefore, creditors' interests are better served by conversion than by dismissal.

## CONCLUSION

For all the reasons stated above, the Court concludes (1) that there is "cause" to convert under § 1112(b), and (2) that conversion is in the best interests of creditors and the estate. First Security's motion joined by the IEDA and CRBT to convert this case from Chapter 11 to Chapter 7 shall be granted.

**WHEREFORE**, Debtor's Motion to Dismiss is DENIED.

**WHEREFORE**, First Security's Motion to Convert this Chapter 11 Case to

a Chapter 7 Case is GRANTED.

Dated and Entered:

December 9, 2019

_____

THAD J. COLLINS
BANKRUPTCY JUDGE