IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| IN RE: | Chapter 7 Bankruptcy |
| | Case No. 19-00507 |
| MCQUILLEN PLACE COMPANY, LLC, | |
| | **Declaration of Ann Schmid** |
| Debtor. | |

I, Ann Schmid, hereby declare under penalty of perjury, that the following is true and correct, pursuant to 28 U.S.C. §1746:

1. I am the Disaster Recovery Team Leader, Historic Preservation Specialist at the Iowa Economic Development Authority (the "*IEDA*"). The IEDA administers the Community Development Block Grant-Disaster Recovery ("*CDBG-DR*") program that was federally funded in response to the Midwest 2008 flooding. Pursuant to an application for CDBG-DR funding by Charles Thomson (the "*Owner*") and the Cerro Gordo County Board of Supervisors, IEDA awarded $2,940,000.00 in CDBG-DR funding for a certain project located at 123 N. Main St, Charles City, Iowa ("*McQuillen Place*"). I am familiar with McQuillen place based upon my personal knowledge and my review of relevant information.

2. After the ground breaking for McQuillen Place in October 2014, IEDA monitored the project and provided quarterly status updated to the relevant federal regulator that noted slow progress. After the construction lien lender foreclosed its mortgage, IEDA met on site to discuss the status of McQuillen Place and the project's financial situation with the Owner, James Gray (the "*Architect*"), representative from the city, the grant administrator and the local lender, but not the primary lender. The primary lender was not present because, despite IEDA directing the Owner to include the lenders in the meeting, the Owner had not in fact invited either of the lenders. Shortly thereafter, IEDA had a teleconference with the lenders to discuss McQuillen place and stress that IEDA remained committed to working with the relevant stakeholders to enable successful completion of the project, which could include IEDA's assistance with finding another developer to complete the project.

3. After this Court appointed Charles L. Smith as the Chapter 7 trustee (the "*Trustee*"), IEDA contacted the Trustee to discuss McQuillen Place. IEDA determined that if the Trustee sold McQuillen Place to a new owner, and that new owner completed the projected within certain terms, then IEDA could document satisfactory completion of the project and potentially allow that new owner access to $1,000,000 of new CDBG-DR funding to complete the project as an enticement to bid on McQuillen Place. IEDA had to reallocate funding from other projects to make the additional CDBG-DR funding available to McQuillen Place.

4. The IEDA is committed to the fair, open and successful expenditure of CDBG-DR funds. To facilitate an active and competitive bidding process for the Trustee to sell McQuillen place, IEDA worked closely with the Trustee, customized the application documents for the additional CDBG-DR funding, created a link for shared application documents, and emailed the information to over two dozen developers.

5. As with many federal funds, CDBG-DR funds may be expended only if certain conditions are met. One primary requirement is for supporting financial documentation regarding the sources and uses of funds. Another significant requirements is that the funds be used for residential and not commercial purposes. While IEDA determined the eligibility of applications for the additional CDBG-DR funding in connection with bids for the purchase of McQuillen Place, IEDA took no position and made no recommendation with regards to which bid was the highest and best bid or with regards to how ultimate ownership of the project should be decided.

6. There were two bids received. The bid from First Security Bank of Charles City ("*First Security Bid*") did not include an application for CDBG-DR funding, which foreclosed a finding of eligibility. The bid from Binstock Development, LLC ("*Binstock Bid*") did include an application for the additional CDBG-DR funding, but the application was significantly deficient. The Binstock Bid did not have supporting financial documentation regarding the sources and uses of funds. Uniquely, the Binstock Bid was submitted with proposed conditions that IEDA would impose upon the developer. However, the proposed conditions did not comport with IEDA's ability and authority to use and award CDBG-DR funds. As such, the Binstock Bid was also not eligible for the additional CDBG-DR funding.

7. IEDA informed the Trustee that neither the First Security Bid nor the Binstock Bid was eligible for any of the additional CDBG-DR funding. IEDA defers to the Trustee regarding the selection of which bid constitutes the highest and best offer and with regards to how ownership of McQuillen Place should ultimately be decided. The decision is solely the Trustee's to make, as to which bid to accept and to present to the Court.

8. Appended here are a Memo I sent to Trustee Smith circa March 26, 2020, a Summary of the two bids sent to Trustee Smith, and an earlier Memo that contained some additional details of the history of IEDA's involvement. These materials were prepared by me or pursuant to my direction, based on my personal knowledge of the situation, and sets out my office's activities and were based on matters I had observed and were reported pursuant to my official duties.

Dated this 27th day of March, 2020

_____
Ann Schmid

# MEMO

**March 26, 2020**

**To:** Trustee Charles L. Smith
**From:** Ann Schmid, Iowa Economic Development Authority – Community Development – Disaster Recovery Team Leader

**RE:** McQuillen Place Multi-Family Housing, Charles City, Iowa – Proposal Process

In March 2013, Charles Thomson and the Cerro Gordo County Board of Supervisors applied to the Iowa Economic Development Authority (IEDA) for Federal Community Development Block Grant Disaster Recovery (CDBG-DR) funding for the production of new housing units in a project known as McQuillen Place, located at 123 N. Main Street in Charles City, IA.

Through a series of events (documented on the attached Memo to Justice David Baker dated 07/03/2018) the IEDA continued to monitor this project with Mr. Thomson, Cerro Gordo County, and the lending entities on this project, including participating in an all-day mediation on July 6, 2018 in Charles City. At that time, the IEDA was no longer approving draws on this project, but the project had already drawn down $2,837,100 of the original $2,940,000 awarded to this project. Leaving $102,900 undrawn.

In December 2019, the IEDA was informed that Charles L. Smith had been appointed Chapter 7 Bankruptcy Trustee. The IEDA reached out to Mr. Smith. The IEDA pursued the opinion that if ownership could be transferred through this process, and the future owner could complete the project within the terms of the federal assistance, IEDA could document satisfactory completion of the project under the federal program.

On January 27, 2020, The IEDA participated in the 341 Creditor's Meeting in Mason City, IA, lead by the appointed Bankruptcy Trustee, Mr. Charles L. Smith. That same day, all interested parties toured the incomplete structure located at 123 N. Main Street, and conducted an initial meeting with the Trustee to discuss a process to seek proposals for the disbursement of the property.

The IEDA saw this disbursement proposal process to be two-fold:
1) Provide the Trustee a mechanism to receive competitive bids for the Acquisition of Real Property and the Personal Property located within the structure, and

2) Allow developers the opportunity to apply for an additional $1,000,000 of Federal CDBG-DR funds to complete the project.

The IEDA modified application documents that are typically used for competitive rounds of CDBG-DR funding and streamlined the proposal process by auto-populating some fields of the application process, as this process would be limited to the single project site. While IEDA worked closely with the Trustee, it was always understood that the final disposition of the property was the sole discretion of the Trustee. IEDA would evaluate applications for CDBG-DR funding based on State program guidelines and federal program requirements only. IEDA would advise the Trustee as to which (if any) of the applicants would be eligible for the CDBG-DR funds, and ultimately if an eligible developer was selected by the Trustee, they would, as such, be awarded the CDBG-DR funds (as ownership of the property is necessary to utilize the CDBG-DR funding).

On February 10, 2020, the IEDA created a link for shared application documents and emailed it to all interested parties (City, Bank, Trustee) along with the following developers:

brentdahlstrom@gmail.com ;                     drb@barkerapartments.com;
maryg@gronenproperties.com;                    kylegalloway@barkercompanies.com ;

| | |
|---|---|
| jim@hobarthistoricrestoration.com ; | tj@blackbirdinvest.com; |
| tim@ctdevelopmentiowa.com; | justin@blackbirdinvest.com; |
| sle@aspectinc.net; | TroyH@HansenRES.com; |
| jenny.clayton@seldin.com; | AndyV@HansenRES.com; |
| phyllisp@seldin.com; | jesse.frey@hubbellrealty.com; |
| jhassman@cvpadvisors.com; | wanderson@sherman-associates.com |
| markholtkamp@yahoo.com; | xanddrew@msn.com |
| caleb@pyramidpropertygroup.com ; | cthomson@doall.com |
| vincent.king@fbfs.com; | james.gray@corniceandrose.com |
| flevy@newburyliving.com; | m.miller@1stsecuritybank.com |
| sam@chihousing.com; | |

The link included a cover letter from the Trustee, all application documents, and the instruction that the link could be disseminated publicly by any interested party.

Prior to proposals being received, IEDA fielded multiple phone calls and emails. IEDA answered general questions and directed developers to other sources of information such as the City or the County Assessor. All inquiries were treated equally and promptly.

March 9, 2020 – Proposals were due to IEDA. Two proposals were received: 1)Binstock Development LLC, 2) First Security Bank of Charles City.

March 12, 2020 – IEDA met in person with the Trustee and the City to go over the received proposals. IEDA informed all parties that neither of the two proposals qualified for CDBG-DR funding (See IEDA's Proposal Summary). It was agreed upon that IEDA's decline letters would be sent after the Trustee made final determination on the disposition of the property, so as not to create any false understanding of the process. As of the date of this memo those decline letters are being finalized by IEDA and will be sent shortly.

IEDA provided technical assistance by providing the Trustee with a summary of the CDBG-DR applications and IEDA's funding determinations; however, the final determination for disposition remained with the Trustee.

## Summary of Bids 123 N. Main Street, Charles City, IA:

The Iowa Economic Development Authority is providing the following summary of the solicitation for proposals for 123 N. Main Street, Charles City, IA to the Chapter 7 Bankruptcy Trustee for applicability of the use of Federal CDBG-DR funding and General Technical Assistance.

## First Security Bank of Charles City:

**Acquisition Bid Amount:** $1,100,000
**CDBG-DR Funds Request:** $0.00
**CBDG-DR Funds Eligible:** $0.00

First Security Bank submitted a letter for bid submittal, including only the acquisition of the parcel and personal property. No IEDA application, Sources and Uses of funds, or project scope of work were included. As such, No CDBG-DR funds were requested from IEDA, therefore no CDBG-DR funds are able to be awarded at this time.

Should the trustee move forward this this award, further application documentation would be required for any future application for CDBG-DR Funds.

## Binstock Development, LLC (BDL):

**Acquisition Bid Amount:** $470,000 (this is the cumulative total of the *Building Acquisition Bid Amount* and the *Personal Items Acquisition Bid Amount* per the Sources and Uses of Funds form).
**CDBG-DR Funds Requested:** $1,000,000
**CDBG-DR Funds Eligible:** $0.00

BDL Submitted a full application for CDBG-DR funds, however the following deficiencies in the application do not allow IEDA to make an award for the requested $1,000,000.

Summary of IEDA Application Deficiencies including but not limited to the following:

| Area of Application | Issue | Remedy |
|---|---|---|
| Sources and Uses of Funds: | Sources: Owner Contribution – type, rate, term, debt service details missing | Update form and additional documentation required to show named lender, commitment of funds, and all relevant terms. |
| Sources and Uses of Funds | Sources: Reduction of Back Taxes – needs explanation | Documentation as to how this is a "Use of Funds" is required. |
| Sources and Uses of Funds: | Sources: Use of Copywrite | Documentation as to how this is a "Use of Funds" is required. |
| Sources and Uses of Funds: | Uses: Must complete third column – how are the Sources of funds separated out by Use? | Update form |
| Financial Commitments | No Documentation was provided. | Financial commitment documents including terms for construction and permanent financing, account statement and balances, and written commitment of all funding sources. |
| City Support | No signature or statement of support specific to this development team | Resolution of support and/or City signature on IEDA application required. |
| Development Team | All development team members must be documented including but not limited to Owner, Developer, General Contractor, sub-contractors, architect, engineer, HERS rater, etc. | A more detailed development team should be provided, including all sub-contractors. |

Should the Trustee move forward with this award, substantial modifications to the application, including but not limited to those noted above, would be required prior to IEDA's ability to award CDBG-DR Funding.

IOWA ECONOMIC DEVELOPMENT AUTHORITY
200 East Grand Avenue | Des Moines, Iowa 50309 USA | Phone: 515.348.6200
iowaeconomicdevelopment.com



# MEMO

**July 3, 2018**

**To:** Justice David Baker
**From:** Ann Schmid, Iowa Economic Development Authority – Community Development – Disaster Recovery

**RE:** McQuillen Place Multi-Family Housing, Charles City, Iowa

As a result of the 2008 Iowa Floods, the State of Iowa received just under one billion dollars of disaster recovery funding from the Federal Department of Housing and Urban Development (HUD). To disburse funds efficiently, the Iowa Economic Development Authority (IEDA) developed a "Super County" system, selecting a large county in each affected region and entering into a single DR-CDBG contract with that county to expend disaster recovery funds within the larger multi-county geographic area. Applications for funding for projects were submitted to IEDA, which made awards through Super Counties and each Super County acted as a pass-through of funds to the project's developer.

As it pertains to the McQuillen Place project in Charles City, the following events may be relevant to the pending litigation and mediation:

March 2009 – IEDA executed Contract 08-DRH-202 with Cerro Gordo County to provide funding assistance to 20 flood affected counties, including Floyd County.

March 1, 2013 – Charles Thomson and the Cerro Gordo County Board of Supervisors applied for disaster recovery funding for McQuillen Place.

July 5, 2013 – IEDA awarded disaster recovery funding to Cerro Gordo County for 2 projects including the McQuillen Place project in Charles City.

July 2013 – The Cerro Gordo County Board of Supervisors approved and signed Amendment 11 to Contract 08-DRH-202 pertaining to an award of $2,940,000 to McQuillen Place in Charles City.

November 6, 2013 – IEDA issued the project "Release of Funds" indicating that environmental compliance was completed, and that project commencement was approved.

October 2014 – IEDA attended the official Ground-Breaking Ceremony for McQuillen Place

January 1, 2015 – Cerro Gordo County filed the Restrictions Agreement required under HUD rules and a mortgage on the property in the amount of the DR-CDBG investment. IEDA acknowledges that the mortgage held by Cedar Rapids Bank and Trust (CRB&T) is in the primary position.

2015 – 2018 – IEDA continued to monitor the project and provided quarterly project status updates to HUD describing slow progress.

March 16, 2018 – Charles Thomson contacted IEDA to disclose that the bank holding the construction lien intended to foreclose on the 1st position mortgage. Mr. Thomson stated that he believed there was a path to a resolution and that it would not come to foreclosure, but he would keep IEDA up to date on any further developments. IEDA later learned that, in fact CRB&T had filed the foreclosure action and attempted service by issuing the petition on Mr. Thomson, which we understand he has disputed. The petition was also served on Cerro Gordo County, and its county attorney has filed an answer.

May 9, 2018 – IEDA requested that Mr. Thomson schedule an on-site meeting with the banks, IEDA, and the City to ascertain the status of the project and discuss the financial situation.

May 24, 2018 – IEDA staff met on site with owner Charles Thomson, architect James Gray, City of Charles City representatives and the grant administrator. Representatives of the banks were not present. IEDA ascertained that Mr. Thomson had not invited representatives of the banks to the meeting. After multiple requests, two representatives from the local bank, First Security, arrived, but CRB&T representatives were not available for the meeting.

The group toured the project site, then proceeded to Charles City City Hall to meet and discuss the project. Since the primary lender was not present, the conversation was limited to the owner indicating his intent to maintain ownership and seek additional funding to finish the project. IEDA stressed the necessity to complete the project within the timeframe remaining for the disaster recovery grants. IEDA is currently working with HUD on a closeout plan for the disaster recovery funds, and anticipates all projects completed and closed by the end of 2019. No decisions or determinations were made at the meeting, and IEDA reiterated that it was necessary to discuss the situation with the primary lender.

May 31, 2018 – Cedar Rapids Bank and Trust initiated a conference call with IEDA, representatives of First Security, and both banks' attorneys to discuss McQuillen Place. During this discussion, IEDA learned that Cedar Rapids Bank and Trust had filed for foreclosure 2 ½ months previously. IEDA reiterated its intention to continue to work with the owner, the city, Cerro Gordo County, the banks and other interested parties to move forward with efforts to complete the project. IEDA described successful efforts in a similar situation to find another developer to complete the project and offered to provide the same assistance to Mr. Thomson and the banks

While unrelated to the foreclosure action, there may still be a dispute between Mr. Thomson and IEDA regarding a state program, the Housing Enterprise Zone Program (HEZ). The Legislature rescinded statutory authority for the HEZ program in 2014. Before the repeal, IEDA notified Mr. Thomson that IEDA intended to make an award to him under the HEZ program for the McQuillan Place project. However, an award is not final until a contract has been executed, and Mr. Thomson did not execute the contract that IEDA sent to him. Furthermore, under Iowa Code, a developer was not eligible for the program unless the project was completed within two years from the time the developer commenced construction. As set out in documentation provided to IEDA by Mr. Thomson, construction was commenced in 2014. Therefore, Mr. Thomson is not eligible for HEZ funding because construction has not been completed some four years after it was commenced. Mr. Thomson has stated that he intends to file suit against IEDA in connection with the HEZ notice of intent to award.

IEDA is committed to the fair, open and successful expenditure of federal Disaster Recovery Funding. These funds are dedicated to the production of new affordable housing units and IEDA is committed to the successful completion of this project and the lease-up to income qualified tenants. As of this date, the project has drawn down $2,837,100, leaving $102,900 in undrawn funds. IEDA is amenable to amending the 2nd position mortgage to enable Cerro Gordo County to assign the mortgage to the City of Charles City to localize the contract. If all parties agree, this change would then allow IEDA to close the Cerro Gordo contract and enter a new contract with the City of Charles City to provide remaining undrawn funds and possibly provide additional qualified funds to complete the project. All of this is, of course, contingent on keeping the 2nd position mortgage and Restrictions Agreement in place with any transferee.

The failure to comply with the successful completion of the project and the associated Restrictions Agreement, would constitute default by Cerro Gordo County. In accordance with Article 9 of Contract 08-DRH-202, IEDA would issue a written Notice of Default to the County providing for a 15-day opportunity to cure, provided that cure is possible and feasible. If the County is unable to provide a remedy, HUD regulations provide for repayment of the full amount of the funds disbursed for this project.