UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re ) | | |
| ) | | |
| MCQUILLEN PLACE COMPANY, LLC, an ) | Case No. 19-00507 | |
| Iowa limited liability company, ) | Chapter 7 | |
| ) | | |
| Debtor. ) | Hon. Thad J. Collins | |
| ) | | |
| ) | | |

## MOTION OF CORNICE & ROSE INTERNATIONAL, LLC, FOR RECONSIDERATION OF ORDER DATED APRIL 9, 2020

NOW COMES Cornice & Rose International, LLC, an Illinois limited liability company ("C&R"), through its counsel, and as and for its "Motion for Reconsideration of Order Dated April 10, 2020" (this "Motion") respectfully state as follows:

1. On March 23, 2020, the Trustee filed a "Motion For Sale of Property Under Section 363" (the "Sale Motion") pursuant to which he seeks, *inter alia*, to sell the principal asset of the estate, certain real and property located at 123 North Main, Charles City, Iowa (the "Property") to First Security Bank & Trust Co. ("First Security") for $1.1 million. On April 8, 2020, this Court held a telephonic hearing (the "Hearing"), during which the Court considered the Sale Motion and several objections thereto, including objections filed by C&R.

2. On April 9, 2020, this Court entered an Order [Docket No. 154] (the "Order") which, *inter alia*, granted the Sale Motion. The Order is stayed by operation of Bankruptcy Rule 6004(h). Since this Motion being filed prior to April 24, 2020, this Motion is permitted by, and the Court is authorized to provide the relief requested under, either Federal Rule of Bankruptcy Procedure 9023 or 9024. See discussion in *Keener v. Super Wings Int'l, Ltd.* (*In re Jody L. Keener*)

1

Bankr. Case No. 14-01169, Adversary No. 14-09061, 2015 WL 5118691, at *2-*3, esp. fn. 1 (Bankr. N.D. Iowa Aug. 28, 2015).

3. As the designer of the uncompleted building that was being constructed on the Property, C&R is its "author" and therefore owner of the architectural works copyright on that building. Under the Copyright Act, an "architectural work" is defined as "the design of a building as embodied in any tangible medium of expression, <u>including a building</u>, architectural plans, or drawings." 17 U.S.C. § 101 (definition of "architectural work"; emphasis added). Under the Architectural Works Copyright Protection Act of 1990, "architectural works" are protected under the Copyright Act. *See* 17 U.S.C. § 102(8).

4. As the owner of the copyrights in the architectural works at issue, C&R has the exclusive rights to that design provided by the Copyright Act. *See* 17 U.S.C. § 106. Violation of those exclusive rights constitutes copyright infringement. 17 U.S.C. 17 U.S.C. § 501(a). The unauthorized construction of a building covered by an architectural works copyright (or any sale or rental of it) is thus illegal and subjects the violator to the panoply of remedies provided by the Copyright Act. *See, e.g.*, *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 729 (8th Cir. 2006) (AWCPA case). For instance, each sale – not just the initial infringing sale – of a building constructed in violation of an architectural works copyright constitutes a fresh violation of the copyright owner's rights. As one court has explained:

> Further, because the constructed homes constitute infringing copies of the Plaintiffs copyrighted works, they cannot be lawfully resold without the Plaintiffs permission. Under 17 U.S.C. § 106(3), a copyrighted article may be sold only by the owner of the copyright. Any sale by another party without the owner's permission constitutes an act of infringement. The only exception to this rule exists under 17 U.S.C. § 109(a), which permits the resale of a copyrighted article by a buyer who received a valid *non-infringing* copy of the work. This is known as the "first sale" doctrine. An *infringing* copy, therefore, does not fit within the "first sale" doctrine embodied in 17 U.S.C. § 109(a) and cannot be resold without the resale causing an additional act of infringement. The homeowners, the Nickols and

Kellers, own houses that are infringing copies. Thus, without express permission by the Plaintiff, any sale of the houses by them or by any subsequent owner will constitute an act of infringement for which the copyright owner could bring suit.

*Palmetto Builders & Designers v. Unireal*, 342 F.Supp.2d 468, 473 (D.S.C. 2004).

5. The Sale Motion contained no reference to the issue of C&R's architectural works copyright. When C&R raised the issue of the copyright and the likelihood that further construction of the building or any subsequent sale or rentals of it would infringe C&R's copyright, counsel for the Trustee and First Security indicated at the Hearing that the Property was being sold "as is" and that C&R would retain its rights to enforce its copyright. Following the Hearing counsel for the Trustee and First Security drafted the Order, and simply inserted some language in the Order which they believed addressed the issue of C&R's copyright. The Order states (at ¶4):

> *the Trustee is authorized and directed to transfer the Property to the Purchaser and, as of the Closing Date, the Purchaser shall take title to and possession of the Property free and clear of all Interests of any kind or nature whatsoever, including but not limited to any existing claims based on copyright infringement, liens or encumbrances, with all such Interests to attach to the proceeds ultimately attributable to the Property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Property or their proceeds.*

and (at ¶19):

> *So long as the Purchaser, or its assignee, or its architect or agents do not use the Plans or Drawings or any work in which Cornice & Rose International, LLC ("C & R") holds a valid copyright (the C & R Intellectual Property), the Purchaser, or its assignee, may use and occupy the Property, develop the Property, and complete the existing interior and exterior of the Property, free and clear of existing and future claims of C & R, whether for copyright infringement or otherwise. The Purchaser, or its assignee, or its architect or agents may not use the C & R Intellectual Property without first making arrangements satisfactory to C & R for the use of the C & R Intellectual Property. Nothing contained herein shall preclude future claims of copyright infringement resulting from the improper or unauthorized use of the C & R Intellectual Property by the Purchaser, or its assignee, or any third parties.*

6. The foregoing text (the "Text") in the Order is contrary to the provisions of Title 17, attempts to authorize actions far beyond the authority of Title 11, violates the property rights of C&R, and is inadequate as a resolution to the problem of C&R's intellectual property rights in

3

the building being constructed on the Property. Indeed, inclusion of the Text in the Order required this Court to interpret and rule on both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce (specifically, Title 17). Such relief – which was not sought in the Motion, but was added *ad hoc* to the Order at the last minute by counsel for the Trustee and First Security – means that this matter is subject to a mandatory withdrawal of the reference under 28 U.S.C. § 157.

7. Specifically, the Text purports to, *inter alia*, authorize the following, each of which is prohibited under Title 17 and/or Title 11:

    a. authorize completion of construction of the building (in violation of C&R's exclusive right of reproduction);

    b. authorize the creation of derivative works (in violation of C&R's exclusive rights to so);

    c. authorize the sale of an unauthorized copy or derivative of C&R's architectural work (in violation of C&R's exclusive right to vend);

    d. enjoin lawful enforcement actions for copyright infringement in the courts of the United States under Title 17; and

    e. purports to grant a forced license of C&R's copyright, despite the fact that neither the Bankruptcy Code nor the Copyright Act authorize such relief, and the Supreme Court declined to allow such forced licenses absent specific legislative authorization. *See generally* PATRY, W., PATRY ON COPYRIGHTS § 10.86 (West 2020) detailing the history of *Sony Corp. of America v. Universal City Studios, Inc.*, 104 S.Ct. 774 (1984) based on the Justices draft opinions and correspondence).

8. The Text and the issues described in paragraph 7 above constitute errors of law that must be corrected. None of these issues presented in paragraph 7 above was raised in the Sale Motion or directly addressed during the Hearing.

9. In the context of the Motion, these matters all "require[] consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Accordingly, C&R will be moving in the United States District Court for the Northern District of Iowa for withdrawal of the reference within the next 24 hours.

WHEREFORE, C&R respectfully request that this Court enter an Order:

(a) setting this matter for hearing;

(b) withdrawing the Order pending resolution of the matters raised in this Motion; and

(c) granting C&R such other and further relief as may be just and equitable under the circumstances.

Respectfully submitted,

CORNICE & ROSE INTERNATIONAL, LLC

/s/Bradley R. Kruse
Bradley R. Kruse AT0004483
Dickinson, Mackaman, Tyler & Hagen, P.C.
699 Walnut Street, Suite 1600
Des Moines, Iowa 50309-3986
direct:(515)246-4505
fax: (515)246-4550
email: bkruse@dickinsonlaw.com

## CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated this 23rd day of April, 2020.

/s/ Antoinette Watson