UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re | ) | |
| | ) | District Case No. _____ |
| MCQUILLEN PLACE COMPANY, LLC, an | ) | (Bankruptcy Case No. 19-00507) |
| Iowa limited liability company, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**MOTION OF CORNICE & ROSE INTERNATIONAL, LLC,
FOR PARTIAL WITHDRAWAL OF THE REFERENCE**

NOW COMES Cornice & Rose International, LLC, an Illinois limited liability company ("C&R"), through its counsel, and as and for its "Motion of Cornice & Rose International, LLC, for Partial Withdrawal of the Reference" (this "Motion") respectfully state as follows:

1. On April 24, 2019, McQuillen Place Company, LLC, an Iowa limited liability company (the "Debtor") filed a petition for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On December 9, 2019, the Bankruptcy Court entered an order converting the case to Chapter 7 of the Bankruptcy Code. Charles L. Smith (the "Trustee") was appointed trustee.

3. On March 23, 2020, the Trustee filed a "Motion For Sale of Property Under Section 363" [Docket No. 134] (the "Sale Motion") pursuant to which he seeks, *inter alia*, to sell the principal asset of the estate, certain real and property located at 123 North Main, Charles City, Iowa (the "Property") to First Security Bank & Trust Co. (the "Bank"). A copy of the Sale Motion is attached hereto as Exhibit A.

1

4. On April 8, 2020, the Bankruptcy Court held a telephonic hearing (the "Hearing"), during which the Bankruptcy Court considered the Sale Motion and several objections thereto, including objections filed by C&R.

5. On April 9, 2020, the Bankruptcy Court entered an Order granting the Sale Motion [Docket No. 154] (the "Order"). A copy of the Order is attached hereto as Exhibit B. The Order was stayed for 14 days pursuant to Bankruptcy Rule 6004(h). C&R has moved in the Bankruptcy Court for reconsideration of the Order (*see* Motion for Reconsideration, attached hereto as Exhibit C).

6. As the designer of the uncompleted building that was being constructed on the Property, C&R is its "author" and therefore owner of the architectural works copyright on that building. Under the Copyright Act, an "architectural work" is defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101 (definition of "architectural work"; emphasis added). Under the Architectural Works Copyright Protection Act of 1990, "architectural works" are protected under the Copyright Act. *See* 17 U.S.C. § 102(8).

7. As the owner of the copyrights in the architectural works at issue, C&R has the exclusive rights to that design provided by the Copyright Act. *See* 17 U.S.C. § 106. Violation of those exclusive rights constitutes copyright infringement. 17 U.S.C. 17 U.S.C. § 501(a). The unauthorized construction of a building covered by an architectural works copyright (or any sale or rental of it) is thus illegal and subjects the violator to the panoply of remedies provided by the Copyright Act. *See, e.g.*, *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 729 (8th Cir. 2006) (AWCPA case). For instance, each sale – not just the initial infringing sale – of a building

constructed in violation of an architectural works copyright constitutes a fresh violation of the copyright owner's rights. As one court has explained:

> Further, because the constructed homes constitute infringing copies of the Plaintiffs copyrighted works, they cannot be lawfully resold without the Plaintiffs permission. Under 17 U.S.C. § 106(3), a copyrighted article may be sold only by the owner of the copyright. Any sale by another party without the owner's permission constitutes an act of infringement. The only exception to this rule exists under 17 U.S.C. § 109(a), which permits the resale of a copyrighted article by a buyer who received a valid *non-infringing* copy of the work. This is known as the "first sale" doctrine. An *infringing* copy, therefore, does not fit within the "first sale" doctrine embodied in 17 U.S.C. § 109(a) and cannot be resold without the resale causing an additional act of infringement. The homeowners, the Nickols and Kellers, own houses that are infringing copies. Thus, without express permission by the Plaintiff, any sale of the houses by them or by any subsequent owner will constitute an act of infringement for which the copyright owner could bring suit.

*Palmetto Builders & Designers v. Unireal*, 342 F.Supp.2d 468, 473 (D.S.C. 2004).

8. Notwithstanding C&R's copyright, and notwithstanding C&R's insistence that the parties to the sale comply with Title 17, the Order, which the parties to the sale drafted and submitted to the Bankruptcy Court for signature, runs afoul of several significant tenets of copyright law and of a number of provisions of Title 17.

9. As a result of the conflict between the text of the Order and the provisions of Title 17, otherwise plainly enforceable substantive rights of C&R in and to its intellectual property may be extinguished or subjected to needless legal controversy.

10. Pursuant to the general referral of bankruptcy matters from the Article III Federal district courts to the bankruptcy courts under 28 U.S.C. §157, bankruptcy courts can "hear" and determine a certain category of cases -- such as confirmation of plans of reorganization or determination of allowance of claims against a debtor -- which are core to these courts' general bankruptcy function. However, this grant of referred jurisdiction reserved to the district courts other cases regarded by Congress as being outside the conventional purview of bankruptcy.

11. Some of these matters, such as controversies involving CERCLA, involve legal determinations for which hearing in the district court is mandatory. These are the cases described in 28 U.S.C. § 157(d). *See*, *S. Pac. Transp. Co. v. Voluntary Purchasing Group, Inc.*, 252 B.R. 373, 385 (E.D. Tex. 2000). *See also, In re Bennett*, 2011 WL 5546955 (Bankr.W.D.Tex. Oct. 7, 2011) and *Burger King Corp. v. B-K of Kansas, Inc.*, No. CIV. A. 86-2294-V, 1991 WL 49926, at *2 (D. Kan. Mar. 21, 1991) (noting that reference had been withdrawn), *aff'd sub nom. In re B-K of Kansas, Inc.*, 21 F.3d 1120 (10th Cir. 1994).

12. United States copyright law is a prime example of Federal law "regulating organizations or activities affecting interstate commerce" as referenced in 28 U.S.C. § 157(d). *See In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992).

13. The policy concerns long associated with this mandatory withdrawal of the reference include the preference of having district courts, rather than bankruptcy courts, making difficult determinations on complex non-bankruptcy Federal statutes [*see*, *In re Isbell Records, Inc.*, "Report and Recommendation" at ¶¶45-46 (Bankr. E.D. Tex. Mar. 29, 2007) (attached hereto as Exhibit D)], particularly in cases of first impression, or (as here) resolving apparent conflicts between bankruptcy and non-bankruptcy law. These policy concerns are particularly acute in matters of copyright. *See, generally,* discussion in *Eli Global, LLC v. Univ. Directories, LLC*, 532 B.R. 249, 251-253 (M.D.N.C. 2015).

14. The Order entered by the Bankruptcy Court in this case is a good illustration of the problems 28 U.S.C. § 157(d) sought to have resolved at the district court level. After C&R pointed out that the sale of the building would likely result in infringement of raised C&R's copyright, counsel for the Trustee and the Bank after the Hearing simply inserted some language in the Order which they believed addressed the issue. The Order states (at ¶4):

> *the Trustee is authorized and directed to transfer the Property to the Purchaser and, as of the Closing Date, the Purchaser shall take title to and possession of the Property free and clear of all Interests of any kind or nature whatsoever, including but not limited to any existing claims based on copyright infringement, liens or encumbrances, with all such Interests to attach to the proceeds ultimately attributable to the Property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Property or their proceeds.*

and (at ¶19):

> *So long as the Purchaser, or its assignee, or its architect or agents do not use the Plans or Drawings or any work in which Cornice & Rose International, LLC ("C & R") holds a valid copyright (the C & R Intellectual Property), the Purchaser, or its assignee, may use and occupy the Property, develop the Property, and complete the existing interior and exterior of the Property, free and clear of existing and future claims of C & R, whether for copyright infringement or otherwise. The Purchaser, or its assignee, or its architect or agents may not use the C & R Intellectual Property without first making arrangements satisfactory to C & R for the use of the C & R Intellectual Property. Nothing contained herein shall preclude future claims of copyright infringement resulting from the improper or unauthorized use of the C & R Intellectual Property by the Purchaser, or its assignee, or any third parties.*

15. The foregoing text (the "Text") in the Order, which was drafted by the Trustee and counsel to the Bank, is contrary to the provisions of Title 17, attempts to authorize actions beyond the authority of the Bankruptcy Court, violates the property rights of C&R, and is inadequate as a resolution to the problem of C&R's intellectual property rights in the building being constructed on the Property. Indeed, inclusion of the Text in the Order required the Bankruptcy Court to interpret and rule on both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce (specifically, Title 17). Such relief – which was not sought in the Motion, but was added *ad hoc* to the Order at the last minute by the Trustee and counsel to the Bank – means that this matter is subject to a mandatory withdrawal of the reference under 28 U.S.C. § 157.

16. Specifically, the Text purports to, *inter alia*, authorize the following, each of which is prohibited under Title 17 and/or Title 11:

5

  a.  authorize completion of construction of the building (in violation of C&R's exclusive right of reproduction);

  b.  authorize the creation of derivative works (in violation of C&R's exclusive rights to do so);

  c.  authorize the sale of an unauthorized copy or derivative of C&R's architectural work (in violation of C&R's exclusive right to vend);

  d.  enjoin lawful enforcement actions for copyright infringement in the courts of the United States under Title 17; and

  e.  grant a forced license of C&R's copyright, despite the fact that neither the Bankruptcy Code nor the Copyright Act authorize such relief, and the Supreme Court declined to allow such forced licenses absent specific legislative authorization. *See generally* PATRY, W., PATRY ON COPYRIGHTS § 10.86 (West 2020) detailing the history of *Sony Corp. of America v. Universal City Studios, Inc.*, 104 S.Ct. 774 (1984) based on the Justices draft opinions and correspondence).

17.  In essence, the Order, if followed, would create one set of copyright laws applicable when a party connected to the copyright had made a trip through bankruptcy jurisdiction, and another, different set of copyright laws for the rest of the copyright holders in the United States.

18.  Such an unacceptable result is precisely why 28 U.S.C. § 157(d) was crafted the way it was, and why this Court should partially[1] withdraw the reference of these issues from the Bankruptcy Court.

---

[1] This Motion seeks withdrawal of the reference from the Bankruptcy Court only with respect to those matters pertaining to the proposed sale of the Property since these are the only issues in which adjudication of rights under Title 17 are required. Withdrawal of the reference of the bankruptcy case generally is not requested.

WHEREFORE, C&R respectfully requests that this Court enter an order:

(a) setting this matter for hearing;

(b) withdrawing the reference from the Bankruptcy Court of those matters arising from or related to the contemplated sale of the Property; and

(c) granting C&R such other and further relief as may be just and equitable under the circumstances.

Respectfully submitted,

CORNICE & ROSE INTERNATIONAL, LLC

/s/Bradley R. Kruse
Bradley R. Kruse AT0004483
Dickinson, Mackaman, Tyler & Hagen, P.C.
699 Walnut Street, Suite 1600
Des Moines, Iowa 50309-3986
direct:(515)246-4505
fax: (515)246-4550
email: bkruse@dickinsonlaw.com

**CERTIFICATE OF SERVICE**

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated this 23rd day of April, 2020.

/s/ Tiffany Roosa