# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| MCQUILLEN PLACE COMPANY, LLC, ) | |
| ) | Bankruptcy No. 19-00507 |
| Debtor ) | |

## RULING ON TRUSTEE'S MOTION TO SELL COUNTER-CLAIMS, MOTION TO SELL LAWSUIT, AND MOTION TO APPROVE SETTLEMENT

This matter came before the Court by telephonic hearing on December 4, 2020. Charles L. Smith appeared for himself as Chapter 7 Trustee. Eric Lam and Eric Langston appeared for First Security Bank & Trust Co. ("FSB"). Peter Riley appeared for Amelia Management, LLC, Charles Thomson, Cornice & Rose International, LLC, and James Gray. Charles Thomson appeared for Debtor, Amelia Management, LLC, Charles Thomson, Cornice & Rose International, LLC, and James Gray. Brandon James Gray appeared for Iowa Economic Development Authority. Joseph E. Schmall and Laura Hyer appeared for Cedar Rapids Bank & Trust Company ("CRBT"). Kayla Sproul appeared for Allen Pederson and Pederson Plumbing. The Court took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. §157(b)(2)(A).

## BACKGROUND AND ARGUMENTS

Debtor filed the underlying Chapter 11 on April 25, 2019. On December 9, 2019, the case was converted to Chapter 7. Before filing, Debtor endeavored to develop a 50,000-square-foot building consisting of retail shops and apartments in downtown Charles City, Iowa. CRBT financed the development initially. As a condition of financing, Debtor executed a written guaranty ("the Guaranty") in favor of CRBT. The Guaranty contained an assignment and subordination provision. Sometime thereafter, CRBT assigned the various notes, mortgages, and loan documents, including the Guaranty, to FSB.

There is a pending Foreclosure in the Iowa District Court in and for Floyd County (Case# EQCV031170) (the "State Court Action"). FSB is the Plaintiff. Debtor, as Defendant, asserted counter-claims on Schedule B-75. FSB filed an Answer to the counter-claims.

The State Court issued an Order staying any action involving the Debtor in response to the filing of the Chapter 11 Petition and the imposition of the § 362 stay. No significant progress had been made on the counter-claims. The Debtor filed Adversary Complaints 19-09035, 9036, in its Bankruptcy case which contained facts and theories similar to those in the State Court counter-claims.

The Complaints and underlying causes of action are assets of the bankruptcy estate. The Trustee is now marshaling and administering the estate assets including all Adversary Complaints. Debtor has not provided the Trustee with any information on either of the Adversary Complaints it filed.

The Defendants in the Adversary Complaints have filed Motions to Dismiss. The Trustee has examined those Motions and relevant caselaw. He concluded the Motions to Dismiss have merit and would likely be granted. He has decided to sell the claims to get some value before the Court rules on dismissal.

The Trustee has filed detailed reasons for his decision to sell in the Motions to Sell and to Settle Adversary Complaints now before this Court. FSB will pay $5,000 to the Trustee, and in exchange, the Debtor, the Trustee, and the bankruptcy estate will release their state claims against the Bank. Approval of the Trustee's Motions would recognize that FSB's claims and liens are valid, allowed, and not subject to any counter-claim. The sale will generate $5,000 to the bankruptcy estate.

The creditors Amelia Management, LLC, James Gray, Charles Thomson, and Cornice & Rose International, LLC object. They argue the Trustee has made fundamental errors in his analysis of the potential returns to the estate from the Adversary Complaints. They argue Trustee has not made a proper investigation into the costs of pursuing litigation and the potential recovery in the event of

success in the litigation. They ultimately argue that the Trustee is not entitled to deference because his analysis did not comport with the due diligence required for this business judgment. In sum, they argue that no rational businessperson would settle the Adversary Counterclaims on the basis proposed by the Trustee, and that his lack of investigation deviates from the standard of care required of a trustee.

## DISCUSSION

### I. Standing

"Bankruptcy standing is narrower than Article III standing." Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.), 151 F.3d 605, 607 (7th Cir. 1998) (citations omitted). To have standing to object in a bankruptcy proceeding, a person must have a pecuniary interest. Id. "The pecuniary interest requirement extends to [a debtor's] objections regarding proposed settlements." In re Zumbach, Ch. 7 Case No. 12-00787, 2015 Bankr. LEXIS 727, at *7 (Bankr. N.D. Iowa Mar. 9, 2015) (citing In re Rake, 363 B.R. 146, 151 (Bankr. D. Idaho 2007).

Typically, a debtor does not have "standing to object to claims or orders relating to them because the debtor does not have a pecuniary interest in the distribution of the assets of the [bankruptcy] estate." Kieffer v. Riske (In re Kieffer-Mickes Inc.), 226 B.R. 204, 208 (B.A.P. 8th Cir. 1998) (citations omitted).

Chapter 7 debtors in particular "rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor." Martino, 151 F.3d at 607.

In this case, Debtor does not have a pecuniary interest in the settlement or sale of counter-claims. The only purported creditors to file an objection to the Trustee's motions were Amelia Management, LLC, Charles Thomson, Cornice & Rose International, LLC, and James Gray. No other interested party or creditor objected the Trustee's motions. All the objecting parties are self-interested and stand to gain little or nothing from current projected distributions, with the exception of Pederson Plumbing & Heating. Charles Thomson and James Gray are equity holders of the Debtor. Charles Thomson is the Principal Agent of Amelia Management, LLC, and James Gray owns Cornice & Rose International, LLC. The Court need not reach any further conclusion on the standing of particular parties as none of the objections to Trustee's motions have merit.

## II. Trustee's Motions

Bankruptcy Rule 9019 provides the standard for reviewing Trustee's Motions:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

5

> (b) Authority To Compromise or Settle Controversies Within Classes. After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

Fed. R. Bankr. P. 9019; See also ReGen Cap. III, Inc. v. Off. Comm. of Unsecured Creditors, (In re Trism, Inc.), 282 B.R. 662, 667 (B.A.P. 8th Cir. 2002) (stating "[p]ursuant to Federal Rule of Bankruptcy Procedure 9019, the court may approve a settlement on motion by the trustee or debtor-in-possession after notice and a hearing."). "A decision to approve or disapprove a proposed settlement under Bankruptcy Rule 9019 is within the discretion of the bankruptcy judge." Id. at 666 (citations omitted).

> [T]he standard for evaluation is whether the settlement is fair and equitable and in the best interests of the estate. The court need only ensure the settlement does not fall below the lowest point in the range of reasonableness. In assessing the reasonableness of a settlement, the court considers: (A) the probability of success in the litigation; (B) the difficulties, if any to be encountered in the matter of collection; (C) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (D) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Ritchie Cap. Mgmt., L.L.C. v. Kelley, 785 F.3d 273, 278–79 (8th Cir. 2015) (quoting Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008)) (citations omitted) (internal quotation marks omitted).

"The purpose of a compromise is to allow the trustee and creditor[s] to avoid the expenses and burdens associated with litigating sharply [contested] and

6

dubious claims." Martin v. Cox (In re Martin), 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997) (internal quotation marks omitted) (first alteration in original) (quoting In re Apex Oil Co., 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988)).  The party seeking approval has the burden to meet this standard by a preponderance of the evidence. Velde v. First Int'l Bank & Trust (In re Y-Knot Constr., Inc.), 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007).  "[T]he 'best result obtainable' is not required in order for Trustee to meet his burden of proof." Boisaubin v. Blackwell (In re Boisaubin), 614 B.R. 557, 564 (B.A.P. 8th Cir. 2020).

"When reviewing the probability of success and the complexity of the litigation, it is unnecessary for the court to conduct a mini-trial on the merits." In re Hefel, Ch. 7 Case No. 10-02787, 2011 Bankr. LEXIS 3570, at *6 (Bankr. N.D. Iowa Sept. 19, 2011) (first citing In re Cajun Elec. Power Co-op., Inc., 119 F.3d 349, 356 (5th Cir. 1997); and then citing Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.), 336 B.R. 87, 93 (Bankr. D. Del. 2005)).  "Rather, the court need only canvass the issues to determine that the settlement does not fall below the lowest point in the range of reasonableness." Cox, 212 B.R. 316, 319 (B.A.P. 8th Cir.1997) (internal quotation marks omitted) (quoting In re Apex Oil Co., 92 B.R. at 867).

As stated at the hearing, the Court is inclined to give deference to the Trustee's opinion unless there is good reason not to do so.  No good reason has

7

been identified. Section 704 of the Bankruptcy Code provides: "(a) The trustee shall-- (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; . . . " 11 U.S.C. § 704(a)(1). Here, the sale and settlement of the counter-claims would generate $5,000 for the Estate. The Trustee argues that he has met these standards.

When considering the factors the Eighth Circuit identified in Lovald, none favor the objectors' arguments. The first factor—that the Trustee has a high probability of success in litigation—favors settlement. The litigation does not have a high probability of success. The Court agrees with Trustee that the motions to dismiss appear to have merit. If the Adversary Complaints are dismissed, the bankruptcy estate would get nothing. Even if the motions to dismiss were denied, the result would be more litigation, more discovery, more uncertainty, and more expense. There does not appear to be a likelihood that the Trustee would ultimately succeed. Even if he could, there is no showing that the net recovery would exceed $5,000 offered to settle. The $5,000 in hand now outweighs the uncertain value of an uncertain amount five years from now.

The second factor—the difficulties, if any, to be encountered in the matter of collection—favors the Trustee. The objectors have not provided any evidence or argument regarding ease or difficulty of collection.

The third factor—the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it—also favors the Trustee. The litigation would have some complexity, and it certainly would be inconvenient and cause increased delay and expense. Creditors have already waited over two years for payment during the bankruptcy. This additional litigation could take up to another five years if it is conducted in the short-handed Iowa State Courts. The delay alone caused by the time it would take to resolve the lawsuit favors approval of the settlement and sale of the counter-claims.

The fourth factor—the interests of the bankruptcy estate's creditors—also favors the Trustee. Notice of the Trustee's Motions was issued to all interested parties and creditors. The only objection to the sale was filed by Amelia Management, LLC, Charles Thomson, Cornice & Rose International, LLC, and James Gray and joined by Pederson Plumbing & Heating. No other interested party or creditor objected to the sale and settlement of the counter-claims. All the objecting parties are self-interested and stand to gain little or nothing from current projected distributions, with the exception of Pederson Plumbing & Heating. Charles Thomson and James Gray are equity holders of the Debtor. Charles Thomson is the Principal Agent of Amelia Management, LLC, and James Gray owns Cornice & Rose International, LLC. Trustee has raised issues related to the

9

standing of some of these parties, but—as noted above—standing issues need not be in any detail here.

The Court also notes that the Debtor valued **all** lawsuits at $200 in its Disclosure Statement filed on October 4, 2019 (Dkt. 57). The Trustee's sale and settlement of counter-claims will generate $5,000 for the bankruptcy estate—far in excess of the original listed value of **all** litigation.

The Court concludes it is in the bankruptcy estate's best interest to grant the Trustee's Motion to Sell Counter-Claims, Motion to Sell Lawsuit, and Motion to Approve Settlement. Considering all the factors relevant here, the Court finds the sale and settlement of counter-claims is fair, reasonable, and in the best interest of the bankruptcy estate.

The Order approving these Motions will establish the liability and the amount of the claim of Debtor McQuillen Place Company, LLC to First Security Bank & Trust Company, but will not have any effect, including any preclusive effect under claim or issue preclusion, on any claims, defenses, or other rights of any other party besides McQuillen Place Company, LLC. It also will not prevent the assertion of any claim, defense or other rights in litigation by any party, including, but not limited to, Charles Thomson, James Gray, Cornice & Rose International, LLC or any person or entity that has any affiliation with those individuals and company in any proceeding of any kind. It similarly will not

prevent any party from asserting any claim, defense, or other rights in connection with any claim by or against First Security Bank & Trust Company, its officers, its directors, or its assignees or successors with respect to any party.[1]

## CONCLUSION

**WHEREFORE**, the creditors' Objection to the Trustee's Motions is **OVERRULED**.

**FURTHER**, the Trustee's Motion to sell claims of the Debtor, the Motion to sell lawsuit, and the Motion to approve settlement are **GRANTED**.

Dated and Entered:

March 30, 2021

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

---

[1] Because this Court's ruling does not bar third-party claims, In re Grove Instruments, Inc., 573 B.R. 307 (Bankr. Mass. 2017) does not apply.